DECK CLAMP TANK CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11227. Promulgated January 25, 1928.

*George E. H. Goodner, Esq.*, for the petitioner.
*Robert A. Littleton, Esq.*, for the respondent.

OPINION.

TRUSSELL: In its income-tax return for the calendar year 1922, petitioner deducted from gross income $4,470.59 as a reasonable allowance for the exhaustion of the value of a patent which it claimed to be allowable under the provisions of section 234 (a) (7) of the Revenue Act of 1921. Respondent disallowed the deduction for the sole reason that petitioner has failed to prove the value or cost of the patent. The only issue is this question of fact.

Petitioner was organized for the sole purpose of taking over the patent here under consideration and of manufacturing and selling the products which were protected under the patent. The patent covered improvements in " Knock-down Tanks " and what was afterward known as the " Deck " clamp. The advantages of the improvements and devices are detailed in the findings of fact and need not be repeated here. It is in evidence and uncontroverted that the product of petitioner would have advantages over that of competitors and under proper management would find a ready demand. We think that the record leaves no doubt that the patent had value and we believe that the amount of the value is determinable upon the evidence before us.

Ordinarily sales of stock are not proof of the value of the assets behind the stock, but in the instant case the investments in the stock of petitioner had a direct relation to the value of the patent and many of the investors, if not all of them, certainly did place a value on the patent.

It was necessary to acquire cash capital for the erection and equipment of the plant. Prospective investors were afforded an opportunity to investigate the patent rights, were shown models of the tank construction and of the " Deck " clamp, and they were informed that $76,000 par value of the capital stock had been issued for the patent and $74,000 par value of stock would be sold at par for cash. Under these conditions within the few months remaining after organization in 1920, an aggregate of $55,400 was invested in the stock of petitioner. The record contains the testimony of five of the original investors who are still stockholders, and every one of them invested cash for stock of petitioner at par after an investigation of the patent and of the proposed products of petitioner. They were all of the opinion that the patent was worth at least the par value of the stock issued for it. They have made it plain that their investments were inspired by a belief in the opportunity to make money and were not made out of friendship for the promoters. They are all still of opinion that the patent is valuable and capable of yielding a good profit under capable management. Let us see

what the qualifications and the investments of these men were. Charles A. Mechling has been in business for 28 years having started at the age of 19 in a machine shop. After acquiring the necessary shop experience, his duties required him to repair machinery in the oil fields. He is the inventor and the part owner of a device used in the oil fields known as the " Mechling line clamp " which has been commercially very successful. He also invented a high-pressure ball gate valve. He has an extensive acquaintance in the mid-continent field and has had full opportunity to observe the use of oil tanks. He invested $2,000 in the stock of petitioner in 1920. In July, 1921, he invested an additional $8,000, receiving a bonus of $4,000 par value of stock of petitioner owned by the Decks and Adair. Several years later, in 1924, he became president of petitioner when the change in the management took place. F. B. Berlin has been in constant contact with the oil business since 1913, his experience including work in the oil fields and the superintendence of oil leases. He is the owner of an interest in the Mechling line clamp. He invested $2,500 in the stock of petitioner in June, 1920. In July, 1921, he invested $8,000 additional and received as a bonus $4,000 par value of the stock of petitioner owned by the Decks and Adair. R. L. Stowell, whose experience began in 1913, has been dealing in oil leases and land investments on his own account since 1918, but prior thereto he was in charge of the Tulsa office of a petroleum company, where his duties called him frequently to the oil fields. He made two investments in the stock of petitioner in 1920, aggregating $2,000. W. H. Mandeville was occupied in the oil fields for many years looking after oil production. In 1920 and 1921, he was assistant superintendent of an oil-refining company. His experience included the purchase of tanks for use in the oil business. He invested $1,000 in the stock of petitioner in 1921. J. A. McCutcheon has been for the past eight years production superintendent for an oil company and prior thereto was an assistant superintendent of production. His experience included many years' use of tanks. He invested $600 in the stock of petitioner in 1920.

We are satisfied these practical, experienced men were capable of discerning value in improvements in oil tanks and of forming opinions of the value well worthy of consideration.

Mechling testified that in 1920 he considered the patent to be worth at least $76,000 and he is still of that opinion. Berlin testified that he was satisfied in 1920 that the patent had a value of at least $76,000 and he still considers it worth that value. Stowell testified that in his opinion the patent had a value of $76,000 in 1920 and it is worth that value now. Mandeville testified that he

was satisfied at the time he bought the stock of petitioner that the patent was worth at least $76,000 and he is still of that opinion. McCutcheon testified that it was his opinion when he invested in stock of petitioner that the patent had a value of at least $76,000.

Another witness, Frank J. Hinderliter, the owner of ten patents and a manufacturer of drilling and fishing tools used in oil wells, testified to the advantages of the product of petitioner over that of competitors and he stated in his opinion the patent had a value around $100,000. He is not a stockholder of petitioner.

G. W. Deck and J. W. Adair testified that the sales of petitioner's stock were made to their friends who were actuated by a willingness to help them and to take a speculative chance, and that the stock of petitioner which they received in 1920 in exchange for the patent had no market value so that they were right in not reporting taxable income from the transaction in 1920. The stock which they gave to Mechling and Berlin in 1921 was an inducement offered to obtain additional capital and the active support of these two men of influence and ability. At the time of the change of management of petitioner they offered to sell their stock but the offer was not accepted. They are still stockholders. We find in the actions of these promoters much that is indicative of opinions on their part that the patent had considerable value and are unable to attach much weight to their testimony.

In our opinion, the transaction in 1921 whereby Mechling and Berlin acquired additional stock is convincing evidence that the patent had a considerable value, but that that value was less than the amount of the par of the stock, and upon weighing all the testimony and considering all the circumstances as shown by the record, we have arrived at the conclusion that this patent had when acquired by the petitioner a cash value of $30,000, and have so found.

It follows that an annual deduction of one-seventeenth of such value on account of exhaustion of the patent monopoly should be allowed.

Respondent has deducted from net income of 1922 a net loss for 1921 determined without an allowance for the exhaustion during 1921 of the value of the patent. Adjustment should be made in accordance with this opinion.

*Judgment will be entered upon 15 days' notice, pursuant to Rule 50.*